UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARLENE SAMPLE,

        Plaintiff,

   v.                               17-CV-635
                                   DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

On July 12, 2017, the plaintiff, Darlene Sample, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On February 16, 2018, Sample moved for judgment on the pleadings, Docket Item 8; on April 18, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on May 11, 2018, Sample replied, Docket Item 11.

For the reasons stated below, this Court denies Sample's motion and grants the Commissioner's cross-motion.

## BACKGROUND

**I.     PROCEDURAL HISTORY**

On September 12, 2013, Sample applied for Supplemental Security Income benefits. Docket Item 6 at 222. She claimed that she had been disabled since October 1, 2012, due to Chiari malformation, stroke, memory loss, and fibromyalgia. *Id.* at 263.

On November 5, 2013, Sample received notice that her application was denied because she was not disabled under the Act. *Id.* at 143. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 159, which was held on February 4, 2016, *id.* at 36. The ALJ then issued a decision on May 23, 2016, confirming the finding that Sample was not disabled. *Id.* at 49. Sample appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 7.

**II.    THE ALJ'S DECISION**

In denying Sample's application, the ALJ evaluated Sample's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that Sample had not engaged in substantial gainful employment since her alleged disability onset date. *See* Docket Item 6 at 38. At

step two, the ALJ determined that Sample had several severe impairments: "status post occipital decompression for Chiari malformation, C1 laminectomy with duraplasty for cerebral spinal fluid leak, stroke, occipital headaches, discogenic disease of the cervical spine, lumbago and panic disorder." *Id.* At step three, the ALJ found that Sample's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, either singly or in combination.

At step four, the ALJ determined that Sample had the following RFC:

> [T]he claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, the claimant can lift, carry, push or pull fifty pounds occasionally and twenty-five pounds frequently. She can sit for two hours and stand/walk for six hours in an eight-hour workday. She cannot work in areas with unprotected heights or around heavy, moving or dangerous machinery and she cannot climb ropes, ladders or scaffolds. The claimant further has occasional limitations in the ability to reach in all directions with the right upper extremity and occasional limitations in the ability to handle with the right hand. The claimant has occasional limitations in the ability to interact appropriately with the public and occasional limitations in dealing with stress. She further could tolerate no exposure to cold or dampness.

*Id.* at 40. Finally, at step five, the ALJ found that significant jobs exist in the national economy that the claimant could perform with her RFC, such as laundry laborer, folder; or hand packager. *Id.* at 48-49.

## **LEGAL STANDARDS**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

4

Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. ALLEGATIONS

Sample objects to the ALJ's decision at steps two, four, and five. Docket Item 8-1 at 14-19. More specifically, she argues that the ALJ erred in finding that her tremors were not a severe impairment, in reaching an RFC that was not supported by the record, and in finding that she could perform a job that her RFC would not actually allow. *Id.*

### II. ANALYSIS

#### A. Tremors

Sample argues that the ALJ erred in finding that her tremors are not a severe impairment. Docket Item 8-1 at 17. She notes that evidence of her tremors appears in the record several times. *Id.; see* Docket Item 6 at 444 ("Tremor" noted in physical therapy notes); 765 (noting Sample's "main issue now is her essential tremor"); 831 (noting "intention tremor").

An impairment is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. Here, the ALJ

5

specifically considered whether Sample's tremors met this standard in addressing whether they were a severe impairment. *See* Docket Item 6 at 38-39. He explicitly found "that the claimant's tremor impairment does not cause more than minimal limitation in the claimant's ability to perform basic work activities." *Id.* And substantial evidence of Sample's daily activities and arm strength supported that finding. *See, e.g.*, *id.* at 95 (plaintiff's testimony that she cooked, cleaned, drove, and drew for fun, among other activities); 836 (treatment note that Sample exhibited full strength and normal reflexes in upper extremities).

Moreover, even if the ALJ had erred at step two, that error was harmless because the ALJ considered Sample's nonsevere impairment from tremors through the remainder of the sequential evaluation process. *Id.* at 39 ("all of the claimant's impairments, both severe and non-severe, have been considered in the determination of the claimant's residual functional capacity."). Indeed, as Sample admits, the ALJ considered and accommodated for her tremors in the handle-and-reach limitations of the RFC. *See* Docket Item 8-1 at 14. "Because these [omitted impairments] were considered during the subsequent steps, any error was harmless." *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

### B. The RFC

Sample also argues that the ALJ's RFC determination was not supported by substantial evidence, that it was internally inconsistent, and that the RFC actually reflects a limitation to light work. *See* Docket Item 8-1 at 14-19. Although none of those arguments is persuasive, this Court finds that the ALJ procedurally erred in discounting the opinion of Sample's treating source physician, Joseph Riccione, D. O. But there

6

nevertheless were good reasons to assign little weight to that opinion, and any error was therefore harmless.

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). And a treating source is an acceptable medical source who has an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 416.927(a)(2). An ALJ generally should give greater weight to the medical opinions of treating physicians because those medical professionals are most able to provide a detailed, longitudinal picture of medical impairments. See 40 C.F.R. § 404.1527(c)(2). In fact, a treating physician's opinion might well be entitled to controlling weight. *See, e.g., Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003).

In evaluating whether a treating physician's opinion will be given controlling weight, the ALJ must first consider whether the opinion is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." § 404.1527(c)(2). If the ALJ decides that the opinion is not entitled to controlling weight, he must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Pilarski v. Comm'r of Soc. Sec.*, 2014 WL 4923994, at *2 (W.D.N.Y. Sep. 30, 2014) (internal quotations omitted). In fact, the ALJ must "give good

7

reasons" for the weight given to treating source opinions.  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion . . . ."). "To override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotations and alterations omitted).  "An ALJ's failure to 'explicitly' apply [these] factors when assigning weight" to a treating source opinion "is procedural error."  *Estrella v. Berryhill*, No. 17-3247-cv (2d Cir. May 29, 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ appropriately declined to assign Dr. Riccione's opinion controlling weight.  For example, the ALJ noted medical evidence that did not support Dr. Riccione's opinion,[1] including other substantial evidence in the record with which Dr. Riccone's opinion was inconsistent.[2]  Docket Item 6 at 47.  That discussion supported the ALJ's decision not to give Dr. Riccione's opinion controlling weight.

---

[1] The ALJ found that the opinion was not supported by the "largely normal physical examinations and brain MRIs" in the record and that Dr. Riccione's opinion was "unsupported by his own treatment notes."  Docket Item 6 at 47.

[2] This included the findings of Kavita Subrahamanian, Ph.D., *id.* at 47, as well as other medical evidence, including the treatment records from Eddy Capote, M.D., and Lorianne Avino, D.O., noting her "5/5" "motor strength" in both upper and lower extremities, *see, e.g., id.* at 352, 419, and of Mary Kauderer, M.D., noting strength of "5/5 in the bilateral deltoid, abductor pollicis brevis, abductor digiti minimi and biceps, triceps, wrist flexion and extension," *id.* at 832.

8

But the ALJ did not explicitly provide "additional reasoning" for giving Dr. Riccione's opinion little weight. *Estrella*, slip op. at 9. What is more, the ALJ omitted any discussion of the frequency, nature, or extent of Dr. Riccione's treatment of Sample or Dr. Riccione's specialty.[3] Docket Item 6 at 46-47. According to the Second Circuit's recent decision in *Estrella*, that failure was procedural error. "Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [the Court] that the substance of the rule was not traversed'—i.e., whether the record otherwise provides 'good reasons' for assigning 'little weight' to" Dr. Riccione's opinion. *Estrella*, slip op. at 10 (quoting *Halloran*, 362 F.3d at 32). And here, the record demonstrates more than ample reasons for assigning little weight to Dr. Riccione's opinion.

First, while Dr. Riccione was a treating source, he was not one for very long. "Generally, the longer a treating source has treated [a claimant] and the more times [a claimant] has been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. § 404.157(c)(i). Dr. Riccione examined Sample only three times in a relatively short period before Sample's hearing.[4] *See*

---

[3] While the ALJ did state that Dr. Riccione treated Sample in June 2015 and completed an employability assessment form in November 2015, *see* Docket Item 6 at 45-46, that falls short of explicitly considering the frequency, length, nature, and extent of treatment well enough to allow a reviewing court to understand his good reasons for assigning the opinion little weight.

[4] On November 18, 2015, Dr. Riccione only completed a form assessing Sample's employability but did not examine Sample. That form indicates that the last date on which Dr. Riccione examined Sample before giving his opinion was August 29, 2015. Docket Item 6 at 828.

9

Docket Item 6 at 782 (treatment note signed June 27, 2015), 789 (treatment note signed August 8, 2015), 791 (treatment note signed August 29, 2015).

Even more significantly, Dr. Riccione's examinations had only a limited connection to one another and to Sample's alleged physical disabilities. On June 27, 2015, Dr. Riccione saw Sample for the first time and noted that she wanted to "establish care." *Id.* at 782. On August 8, 2015, Dr. Riccione saw Sample "for [a] lump" and noted that her "[l]eft upper thigh is red." *Id.* at 789. On August 29, 2015, Dr. Riccione saw Sample for a follow up and noted "a painful lesion in the left lower leg" that was "similar, but less in severity, to a previous lesion high up on the same leg." *Id.* at 791. Such brief treatment and follow up in a short period on matters seemingly unrelated to Sample's alleged disability lack the longitudinal perspective on the claimant's health that largely gives treating source opinions their value. *See* § 404.157(c)(i) ("When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the Commissioner] will give the medical source's medical opinion more weight than . . . a nontreating source.").

Furthermore, Dr. Riccione's opinion has little support in the record. Dr. Riccione's own treatment notes conflict in ways that directly affect Sample's limitations. For example, on June 27, 2015, Dr. Riccione noted that Sample exhibited "normal [range of motion in her] upper and lower extremities," *id.* at 785, apparently in conflict with his opinion. As for other examining physicians, the treatment records from Drs. Capote and Avino note Sample's "5/5" "motor strength" in both upper and lower extremities, see, e.g., id. at 352, 419, and those from Dr. Kauderer note strength of "5/5 in the bilateral deltoid, abductor pollicis brevis, abductor digiti minimi and biceps, triceps,

10

wrist flexion and extension," *Id.* at 832. So despite the ALJ's procedural error, the record "otherwise provide[s] 'good reasons' for assigning 'little weight' to" Dr. Riccione's opinion, rendering that error harmless. *See Estrella*, slip op. at 10 (citing *Halloran*, 362 F.3d at 32).

Furthermore, contrary to Sample's assertions, the RFC is not internally inconsistent. Sample argues that occasional limitations in reaching and handling with the right upper extremity render her incapable of lifting fifty pounds occasionally and twenty-five pounds frequently, as medium work requires. Docket Item 8-1 at 15. But Sample cites no authority for this proposition, nor is a limited ability to reach necessarily inconsistent with an ability to lift.

Finally, Sample argues that the ALJ's finding that she could perform "less than the full range of Medium" work is more in line with a limitation to light work. Docket Item 8-1 at 18. Sample again cites no authority for that argument and simply asserts that the lifting and carrying capacity in the RFC is not supported by the record. *Id.* But the record supports no more limited carrying capacity, either. And Sample points to no evidence in the record that she is limited to lifting ten pounds, even though it is her burden to do so. 20 C.F.R. § 404.1567; *see Massimino v. Shalala*, 927 F.Supp. 139, 145-46 (S.D.N.Y. 1996) ("Plaintiff must put forward some suggestion that evidence overlooked by the ALJ would now result in a different determination. . . . The only evidence offered in support of Plaintiff's testimony that she is unable to lift or carry more than ten pounds . . . does not even state that Plaintiff is limited to lifting and carrying ten pounds. In fact it includes no limitations, in any amount."). The ALJ was entitled to

reach an appropriate limitation by weighing the evidence in the record. *See Matta*, 508 Fed. App'x. at 56.

### C. Any Error at Step Five Was Harmless

Finally, Sample argues that the ALJ erred at step five by finding that she could perform the job of "Hand Packager." Docket Item 8-1 at 17. According to Sample, that job requires constantly handling and fingering, which she could not do with an RFC that included occasional limitation in handling with her right hand. *Id.* But even if Sample is correct, any error again is harmless.

Before finding that a claimant is not disabled, the Commissioner must provide evidence demonstrating that, given the claimant's residual functional capacity and vocational factors, there is work that "exists in significant numbers in the national economy" that the claimant can perform. 20 C.F.R. § 404.1560(c)(2). "The Commissioner need show only one [such] job." *Bavaro v. Astrue*, 413 Fed. App'x 382, 384 (2d Cir. 2011). "Within the Second Circuit, courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers, but courts have adopted a relatively low threshold number." *Harper v. Berryhill*, 2017 WL 3085806, at *15 (D. Conn. July 20, 2017).

Here, Sample argues that because she cannot perform the hand packager job, significant jobs do not exist in the national economy that she can perform. Docket Item 8-1 at 17. But the ALJ also found that she could perform another job: laundry laborer, folder. Docket Item 6 at 48-49. There are 410,000 such jobs in the national economy, *id.*, and that is a significant number. *See, e.g.*, *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (concluding that 6,000 jobs nationally "fits comfortably

within what this court and others have deemed 'significant'"); *cf. Harper*, 2017 WL 3085806, at *15 ("1,000 document preparer positions does constitute a significant number of available jobs in this region."). For that reason, any error about whether Sample could work as a hand packager was harmless. *See McIntyre v. Colvin*, 758 F.3d 146, 148 (2d Cir. 2014) (applying harmless error analysis to an error in the ALJ's question to the vocational expert at step five).

## **CONCLUSION**

For the reasons stated above, Sample's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 10, is GRANTED. The complaint is dismissed, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: June 13, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE